### E. V. ROSS ET AL. *v.* ANNIE E. PORTER ET AL.

HOMESTEAD. *Abandonment. Reacquirement. Intent.*

Where the exemptionist abandons a rural homestead and acquires another in town, but afterwards finally abandons the latter with the intent, as soon as practicable, to reoccupy the country home, and arranges with his tenant for possession and makes preparations therefor, but is prevented by protracted sickness, which, after the date which he expected to re-enter, ends in death, the country place becomes revested with its homestead character, and is exempt from his debts.

FROM the chancery court of Lee county.

HON. BAXTER MCFARLAND, Chancellor.

This is a bill by appellees, Annie E. Porter, for herself and as next friend of C. R. Porter and Lucien L. Porter, against T. J. Ross, their guardian, and against W. C. Ross and Laura Porter, sureties on his bond, and against appellant, Mrs. E. V. Ross, sole heir of S. H. Ross, deceased, another surety. The purpose of the bill is to obtain a decree against said sureties for certain sums due to each of the complainants by T. J. Ross, their guardian, he having squandered their funds. The bill recites that S. H. Ross died seized of a certain lot in the town of Verona, in Lee county, which, after his death, E. V. Ross, his widow and sole heir, had sold and conveyed to V. C. Kincannon. The bill asks that this lot be subjected to complainant's debts, as having belonged to S. H. Ross at the time of his death. V. C. Kincannon is made a party defendant. The bill also seeks to subject to complainant's demand against their guardian and his sureties a certain tract of land in the country containing about sixty-five acres, and which appellant, Mrs. E. V. Ross, claims was the homestead of her husband at the time of his death, and descended to her free from liability to his debts. On the other hand, V. C. Kincannon, by his answer, avers that the lot in the town of Verona was the homestead of S. H. Ross at the time of his death, and as such, is exempt.

The facts in evidence touching the question of homestead, briefly stated, are as follows: In 1879 S. H. Ross was elected tax assessor of Lee county, and removed from his country place to Verona, intending, according to some of the testimony, to return when he should cease to be assessor. There is testimony tending to show that he removed to Verona because it was a railroad station, and he could better discharge the duties of his office, and also because his country home was in a part of the county thickly populated with negroes, and, on account of the perturbed political condition of the country, it was considered unsafe to leave his wife there alone. He purchased a house and lot in Verona, and lived in it with his wife. He was twice re-elected assessor, but, in 1887, ran for the office of treas-

urer, and was defeated.　He thereupon determined to carry out his purpose of returning to his country home, and moved from his town place and rented it to another.　After boarding awhile, in July, 1888, he went to the home of his wife's brother, in the country, about five miles from his own farm. Before leaving Verona, he had gone with his wife to his farm, which was then rented for the year, and arranged with his tenant to store on the place the share of the crops coming to him as landlord, and also for the surrender of possession to him in October, after the crops should have been gathered.　While visiting at the home of his brother in law, his health, which was always delicate, grew rapidly worse, and he remained there ill until sometime in November, when he died.　After his death, E. V. Ross, his widow, took possession of the farm, and was occupying it as her home when the bill in this case was filed.

On final hearing, the court was of the opinion that both homesteads had been abandoned, and subjected them to the debts of complainant.　From this decree, Mrs. Ross and V. C. Kincannon appeal.

*J. A. Blair* and *Brame & Alexander*, for appellant, E. V. Ross.

If S. H. Ross, by acquiring the home in town, lost the one in the country, he had reacquired the latter at the time of his death.　One cannot assert a claim to two homesteads at the same time.　It is not true, however, that one may not have two or more places, either of which he is entitled to call home.　If Ross elected to make the place in town his homestead, there was nothing about this that was irrevocable.　Before any lien attached, or before a sale under execution, he could abandon the urban home and reacquire the rural.　This, the evidence clearly shows, was done.　We recognize that occupancy in some form or other is essential.　A bare intent to occupy is insufficient; but preparation to occupy a homestead is often construed as equivalent to actual occupancy.　It is not required that the

exemptionist and all his family must be bodily on the premises before the homestead right accrues.    *Pedis possessio* is not essential.    Even where a house is unfurnished, or where removal has just begun, acts evidencing an intent to speedily occupy, stamp a place with the character of a homestead.    *Reske* v. *Reske,* 51 Mich., 541; 64 *Ib.,* 693; 50 Kan., 755; 21 Wall., 481; 66 Iowa, 666; 18 Fla., 756.    This is true *ex rei necessitate.*    It takes time to accomplish a removal from one place to another.    If bodily possession by the exemptionist is essential, then an insolvent can never acquire a home without having a race with the sheriff.    Nor can he remove from one to another without the danger of losing both and becoming an outcast and a vagabond.

Ross had completely abandoned his town home.    His furniture was temporarily stored, and, unless he was reinvested with the homestead in the country, he and his wife, from having two homes, were suddenly reduced to homelessness and beggary.

*Finley & Long,* for appellant, V. C. Kincannon.

The evidence clearly shows that Ross had abandoned his home in the country and acquired the one in town.    The town home had never been abandoned.    On the other hand, after he had been defeated for treasurer, he rented the country home to tenants for another year.    There was no intention to speedily reoccupy the old home.    Convenience or economy is not equivalent to "casualty or necessity."    The intention to reoccupy must continue all through such absence.    We submit that the facts show that, at the time of the death of Ross, the town place was the only homestead.

*Clayton & Anderson,* for appellees.

The acquisition of the homestead in Verona was conclusive evidence of the abandonment of the one in the country.    Thompson on Homesteads, § 279.    It cannot be true that both the

places are exempt. The town lot had been clearly abandoned, and with no intention of returning thereto. It is clear that, when Ross acquired the town home he lost the one in the country, and he had not reacquired it at the time of his death.

Argued orally by *C. H. Alexander*, for appellant, Ross.

WOODS, J., delivered the opinion of the court.

We are clearly of opinion that S. H. Ross, the husband of appellant, E. V. Ross, abandoned his homestead in the country and acquired another in the town of Verona. We are clearly of opinion, also, that he finally abandoned the Verona homestead, with the intention of reoccupying the country place as his homestead again, and as speedily as practicable. His declarations to all who conversed with him on the subject, and his concurrent acts demonstrate this intention with absolute certainty. To the tenant in possession of the country place, he gave directions as to storing on the premises his part of the crops—the food crops; he made some arrangements with the tenant looking to his reoccupation of the country house; he actually secured the right from the tenant to enter the premises before the tenant's lease would have naturally expired; and his preparations were completed under which he would have been actually in the reoccupancy of his old home before his death, if the silent but irresistible messenger had not prostrated him on a bed of suffering from which he never rose. He would have been in the country house before death overtook him, but for illness so serious as prevented his removal from the hospitable roof that sheltered him temporarily.

In *Wilson* v. *Gray*, 59 Miss., 525, it was held, in effect, that an intention to speedily abandon a homestead, followed by an actual abandonment, would divest the residence of the character of a homestead. This rule will stamp the country place, in the case at bar, with the character of a homestead. S. H. Ross had abandoned the town house as a homestead, and had formed

the fixed intention of reoccupying the country place as his homestead as speedily as possible.    He had made the necessary preparations to reoccupy in September or October, and he only failed to actually take possession by reason of prostration on his deathbed, his death occurring late in November, a date subsequent to that on which he had arranged to enter.

*The decree is affirmed on the appeal of V. C. Kincannon, and reversed on the appeal of E. V. Ross, and the bill dismissed in so far as it seeks to subject the country homestead.*