GARDNER *v.* COOK.

(Division A. Dec. 10, 1934. Suggestion of Error Overruled ,Aug. 31, 1935.)

[158 So. 150. No. 31480.]

D. H. Waits, of Leland, for appellant.

246.

Douglas E. Beams, of Greenville, and Louis C. Hallam, of Jackson, for appellee.

248

Argued orally by **D. H. Waits,** for appellant, and by **Louis C. Hallam,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

This was an action of unlawful entry and detainer filed in the county court of Washington county by the appellant, Gardner, a white man, against the appellee, Susan Gray Gant Cook, a negro woman sixty-eight years of age, alleging that she unlawfully withheld from him the possession of a small twenty-acre farm.

The appellee appeared and filed a general issue plea. On the trial of the issue, the county court entered a judgment in favor of the appellant, Gardner, adjudging that he was entitled to the possession of the land in controversy. Appellee appealed to the circuit court, which reversed the judgment of the county court, and entered a judgment in favor of the appellee, with costs. An appeal is prosecuted here from that judgment.

This is a proceeding under sections 3456 and 3458, Code

1930, except that exclusive jurisdiction is now vested in the county court. See section 693, Code 1930.

Gardner's claim of possession was based on a trustee's deed made to him by the trustee named in a deed of trust executed by Susan Gray Gant Cook in favor of Gardner, default having been made therein, foreclosure had, and Gardner being the purchaser at the sale.

The appellee contended that the deed of trust and the trustee's deed were void under section 1780, Code 1930, because she was married and her husband had not signed and acknowledged the deed of trust.

The narrow question presented was whether or not, within the purview of the said statute, the husband was living with the wife.

It appears from the evidence that the appellee was married to Cook on May 1, 1930, and that they lived together immediately thereafter on the land in controversy as a homestead. The wife, Susan, had lived there since the year 1921, and since the death of her former husband, Gant. In 1931, at the time when she and her husband, Cook, were living together on this land, she, without the husband joining therein, executed a deed of trust in favor of Gardner for a pre-existing debt, and to secure advances to be made during the year. On March 2, 1932, Gardner required Susan to execute a deed of trust which she signed as Susan Gray Gant, and in the body of this deed of trust, which had been prepared by Gardner, she was described as Susan Gray Gant. A few days later, he prepared another deed of trust correcting, in some measure, the description, and describing her as Susan Gray Gant Cook, which she signed, acknowledged, and delivered to him. It was promptly recorded, and this last deed of trust was foreclosed.

Prior to the beginning of this suit in February, 1934, Gardner knew of the marriage and knew of their occupancy of the land as a homestead, but did not know that

it was necessary for the husband to join in the deed of trust.

Gardner testified that, after the execution of the first deed of trust in 1931, Susan told him that her husband had left the place and would not return; that she could not take additional land because her husband was of no account to her. He further testified that he had not seen the husband about the premises since May, 1931, although he was frequently in that community.

At the time of the signing of the deed of trust in controversy, no conversion is shown to have been had, or representation made, between the parties. No inquiry was made with reference to the husband.

Two witnesses for the appellant testified that they had not seen the husband on the place where Susan lived since the spring of 1931. One witness testified that the husband had left the place carrying a small bundle of clothes and proceeded to the house of his married daughter not far from Susan's house.

Susan, in her own behalf, testified that, on the day the deed of trust which was foreclosed was signed by her, her husband was in the house living with her. This is undisputed. It is further undisputed that in May, 1931, he was sick with high blood pressure, unable to work, and that he went to the home of his married daughter in order that he might have chickens and milk, Susan being unable to furnish the necessary food. That he would stay with his daughter until her husband expressed dissatisfaction, and then he would return to Susan's home. She testified that they lived together two years, and that in the fall or winter of 1932 her husband left the home of his daughter to go to the hills, saying the water at her place was killing him. Susan further testified that, in the fall of 1933, she received a letter from her husband in which he expressed a desire to return to his home with her, that he needed an operation; that she had a misunderstanding with him,

the circumstances of which were not inquired into by either party: She was not divorced from Cook, and she was willing for him to return at any time. She said they would tease her, and she probably said that he was no account and of no use to her.

After a careful study of this record, we have reached the conclusion that the negative testimony of some of the witnesses and of Gardner that they had not seen the husband on the place since May, 1931, is not in conflict with Susan's positive statement that she and her husband lived together for two years, and were living together when the two deeds of trust were executed in 1932. Her testimony, likewise, is undisputed as to his reason for not occupying the home with her at times. The letter she received from him, as to which she testified, is not disputed. We, therefore, conclude that he was living apart from his wife, not as a separation from her, but because she was unable to provide him with the necessary food, and because the water was injurious to his health. As stated, Susan and her husband are negroes, and the testimony with reference to their living apart, and the causes thereof, must be viewed in connection with the general knowledge of their traits and characteristics. They were old, the husband being seventy years of age, and, as stated, Susan being sixty-eight.

The one disagreement, the nature of which is not shown, is not sufficient upon which to base a decision of the court that he had abandoned his home. We think the record shows that he was away therefrom because of the necessities of his case, proper food, etc., and that his letter shows that he had not abandoned the conjugal relation, nor the occupancy of the exempt homestead within section 1780, Code 1930, a portion of which reads as follows: "A conveyance, mortgage, deed of trust or other incumbrance of the homestead where it is the property of the wife shall not be valid or binding unless signed and

acknowledged by the owner and the husband if he be living with his wife. . . ."

Applying the rule, which is applicable here and almost everywhere, to this case, we think the circuit court correctly found that Cook was living with his wife. His signature was necessary, and, without it, the deed of trust was void, a nullity. Cummings v. Busby, 62 Miss. 195, where it was said that: "The deed of trust executed by Busby without the joinder of his wife, as required by the statute, was not valid, and its invalidity was not cured by the subsequent removal from the homestead, whether such removal was temporary or permanent. The validity or invalidity of the deed of trust was determinable by the conditions existing when it was executed, and not by what occurred afterward." See, also, Hubbard v. Sage Land & Improvement Co., 81 Miss. 616, 33 So. 413. This conveyance ran counter to the statute, and the statute, like a tyrant, destroyed it. G. & S. I. R. Co. v. Singleterry, 78 Miss. 777, 29 So. 754.

The proof of abandonment of a homestead, in a case of this character, must be clear and decisive of an intention on the part of a spouse to abandon the homestead, accompanied by a removal from the premises. Campbell v. Adair, 45 Miss. 170. Likewise, homestead statutes are to be construed sensibly, but liberally, in favor of the exemptionists.

For these reasons, we are of the opinion that the contention of the appellant that the judgment of the circuit court was against the law and the evidence is not well taken.

■ The appellant next insists that the defense that the deed of trust is void is not available to the appellee, because the action of unlawful entry and detainer is possessory only and the title is not involved. The answer is simple. Gardner's only claim to the possession was by virtue of a void deed of trust, one that was a nullity and not binding on appellee.

■ There is no merit in the contention of the appellant that the benefits of the statute must be affirmatively asserted, which has not been done by the husband of the appellee. No authority is cited for such contention, nor is there any merit in the contention that the appellee is estopped to assert that the deed of trust is void because she secured the credit and advances on the faith thereof. The evidence shows that neither party knew that the signature of the husband was necessary to the validity of the conveyance. No request is shown to have been made of the husband to sign the instrument. He never had an opportunity to sign or exercise his veto, and it is not shown that Susan made any representations which could have deceived Gardner. She simply signed on the dotted line as he requested. There is no estoppel, legal or equitable, in this case.

Affirmed.